1

2

3

4

5

6

7

IN THE UNITED STATES DISTRICT COURT

8

FOR THE DISTRICT OF OREGON

9

DAN MORROW,                                    Civil No. 06-349-AA
                                               OPINION AND ORDER
10
          Plaintiff,

11
     vs.

12

JO ANNE B. BARNHART,
13  Commissioner of Social Security,

14          Defendant.

15  _____

16  Tim Wilborn
    Attorney At Law
17  19093 S. Beavercreek Road, PMB #314
    Oregon City, Oregon 97045
18          Attorney for plaintiff

19  Karin Immergut
    United States Attorney
20  District of Oregon
    Neil Evans
21  Assistant United States Attorney
    1000 S.W. Third Avenue
22  Portland, Oregon 97204-2902

23  David J. Burdett
    Special Assistant U.S. Attorney
24  Social Security Administration
    701 Fifth Avenue, Suite 2900 M/S 901
25  Seattle, Washington 98104-7075
            Attorneys for defendant
26

27  AIKEN, Judge:

28          Plaintiff, Dan Morrow, brings this action pursuant to the

    1    - OPINION AND ORDER

Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner.  The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, and for Supplemental Security Income (SSI) disability benefits under Title XVI.  42 U.S.C. §§ 416, 423.  For the reasons set forth below, the Commissioner's decision is reversed and remanded for payment of benefits.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed his application for DIB and SSI benefits on November 12, 2002.  Tr. 63.  He alleged disability due to chronic back pain, shoulder and ankle problems, and posttraumatic stress disorder (PTSD) commencing on October 1, 2000.  Tr. 15.  His application was denied initially and upon reconsideration.  Tr. 26, 33.  After a hearing on January 24, 2005, the Administrative Law Judge (ALJ) ruled that plaintiff was not disabled because plaintiff can perform past relevant work as a routine office worker.  Tr. 16. The Appeals Council denied plaintiff's request for review making the ALJ's decision the final agency decision.  Tr. 6; See 20 C.F.R. §§ 404.981, 416.1481.

## STATEMENT OF THE FACTS

Plaintiff was 56 years old at the alleged onset date of his disability, and 60 years old at the time of the ALJ hearing.  Tr. 16.  Plaintiff graduated from high school in Long Creek, Oregon, and immediately thereafter served four years in the United States Marine Corps as a mechanic and aerial gunner on a helicopter.  Tr. 160.  From 1968 until 2000, plaintiff was

1    employed as a truck driver based out of Portland.  Id.

2    Plaintiff injured his back and shoulder in 1996.  He was

3    planning to retire in 1997, so his employer assigned him to

4    light duty clerical assignments in the dispatching office until

5    1997.  Tr. 160, 555.  Because plaintiff and his wife needed

6    more income, plaintiff returned to work with his former

7    trucking employer during 1999 and 2000.  Tr. 557.  Knowing

8    plaintiff's medical history, plaintiff's employer arranged for

9    plaintiff to drive the truck and drop the trailer, without

10   unloading the trailer.  Tr. 557.  Plaintiff, however, had to

11   ultimately stop working because sitting for extended periods of

12   time aggravated his back condition.  Id.  In 2003, plaintiff

13   and his wife moved from Portland to the small community of Long

14   Creek, Oregon, for relief from the crowds of the city which

15   decreased plaintiff's PTSD symptoms.  Tr. 162, 572.

16        Plaintiff's medical history is set out in detail by the

17   ALJ.  Tr. 16-22.  This court accepts the ALJ's recitation of

18   plaintiff's medical history.

19                        **STANDARD OF REVIEW**

20        This court must affirm the Secretary's decision if it is

21   based on proper legal standards and the findings are supported

22   by substantial evidence in the record.  Hammock v. Bowen, 879

23   F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more

24   than a mere scintilla.  It means such relevant evidence as a

25   reasonable mind might accept as adequate to support a

26   conclusion."  Richardson v. Perales, 402 U.S. 389, 401

27   (1971)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

28   197, 229 (1938)).  The court must weigh "both the evidence that

3    - OPINION AND ORDER

supports and detracts from the Secretary's conclusions."
Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the claimant to
establish disability.  Howard v. Heckler, 782 F.2d 1484, 1486
(9th Cir. 1986).  To meet this burden, plaintiff must
demonstrate an "inability to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which can be expected . . . to last for a
continuous period of not less than 12 months. . . ."  42 U.S.C.
§ 423(d)(1)(A).

The Secretary has established a five-step sequential
process for determining whether a person is disabled.  Bowen v.
Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502,
416.920.  First the Secretary determines whether a claimant is
engaged in "substantial gainful activity."  If so, the claimant
is not disabled.  Yuckert, 482 U.S. at 140; 20 C.F.R.
§§ 404.1520(b), 416.920(b).

In step two the Secretary determines whether the claimant
has a "medically severe impairment or combination of
impairments."  Yuckert, 482 U.S. at 140-41; see 20 C.F.R.
§§ 404.1520(c), 416.920(c).  If not, the claimant is not
disabled.

In step three the Secretary determines whether the
impairment meets or equals "one of a number of listed
impairments that the Secretary acknowledges are so severe as to
preclude substantial gainful activity."  Id.; see 20 C.F.R.
§§ 404.1520(d), 416.920(d).  If so, the claimant is
conclusively presumed disabled; if not, the Secretary proceeds

1    to step four.  Yuckert, 482 U.S. at 141.

2         In step four the Secretary determines whether the

3    claimant can still perform "past relevant work."  20 C.F.R.

4    §§ 404.1520(e), 416.920(e).  If the claimant can work, he is

5    not disabled.  If he cannot perform past relevant work, the

6    burden shifts to the Secretary.  In step five, the Secretary

7    must establish that the claimant can perform other work.

8    Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) &

9    (f), 416.920(e) & (f).  If the Secretary meets this burden and

10   proves that the claimant is able to perform other work which

11   exists in the national economy, he is not disabled.  20 C.F.R.

12   §§ 404.1566, 416.966.

13                            **DISCUSSION**

14        Following the five-step sequential analysis, the ALJ

15   found at step one that plaintiff has not engaged in

16   "substantial gainful activity" since his alleged onset of

17   disability.  Tr. 22.  At step two, the ALJ found that plaintiff

18   had the following "severe impairments:" degenerative disc

19   disease at C6-C7; mild degenerative disc space narrowing at L3-

20   L4; hyperesthesia and paresthesia in the upper extremities

21   associated with elevating or extending the upper extremities

22   above shoulder level; ankle pain caused by episodic arthritis

23   and gout; recurrence of PTSD and depressed mood, secondary to

24   alcohol dependence; and alcohol dependence/abuse.  Id.  At step

25   three, the ALJ found that plaintiff's impairments did not meet

26   or equal the requirements of a listed impairment.  Id.

27        The ALJ next determined that plaintiff had a residual

28   functional capacity (RFC) to perform light exertion work in

     5   - OPINION AND ORDER

that he can stand and/or walk a total of 6 hours in an 8-hour
workday, and he can sit a total of 6 hours in an 8-hour
workday.  Tr. 23.  The ALJ limited plaintiff to work that
involves occasional use of ladders, ropes and scaffolds and no
more than occasional stooping and crawling.  Id.  Finally, the
ALJ limited plaintiff's reach in all directions, including
overhead.  Id.  Plaintiff disputes the accuracy of this RFC.

At step four, the ALJ found that plaintiff was able to
perform his past relevant work as a routine office clerk
because this work did not require the performance of activities
precluded by his RFC.  Tr. 23.  See 20 C.F.R. § 404.1565.

In sum, plaintiff objects to the ALJ's: (1) exclusion of
relevant evidence in formulating plaintiff's RFC; and (2)
conclusion that plaintiff can perform the work of a routine
office clerk.  In particular, plaintiff argues that the ALJ
improperly discounted (1) treating physician Dr. Lee's
assessment of plaintiff; (2) plaintiff's pain testimony; (3)
the third-party questionnaire prepared by plaintiff's wife; and
(4) failed to discuss all of plaintiff's "severe impairments"
in formulating the RFC by excluding plaintiff's arthritis,
gout, ankle pain, and PTSD.

Consequently, plaintiff argues, if the evidence had been
properly considered, the ALJ would have formulated a different
RFC and would not have found that plaintiff could return to
past relevant work as a routine office worker.  Plaintiff
relies on the vocational expert's testimony that two medically
related work absences per month would render plaintiff not
employable.  Plaintiff argues Dr. Lee assessed plaintiff's

1   absenteeism at that rate.   Therefore, plaintiff asserts this
2   court must find plaintiff disabled and remand for an award of
3   benefits.
4   A.    Claimant's Credibility
5         Plaintiff argues that the ALJ erred in finding
6   plaintiff's testimony not credible.   The ALJ found plaintiff
7   not credible because (1) the medical record did not support
8   plaintiff's allegations that he is unable to perform basic work
9   activities due to limitations resulting from his "severe
10  impairments;" (2) plaintiff's current daily activities are
11  inconsistent with his alleged level of limitations; and (3)
12  plaintiff has provided inconsistent information regarding his
13  activities.   Tr. 20.
14        In rejecting a plaintiff's testimony, the ALJ must
15  perform a two-stage analysis.   Smolen v. Chater, 80 F.3d 1273,
16  1281 (9th Cir. 1996).   First, a plaintiff must produce
17  objective medical evidence of an underlying impairment which
18  could reasonably be expected to produce the pain or other
19  symptoms alleged.   There must be no evidence of malingering.
20  Here, plaintiff has produced objective evidence of an
21  impairment that could produce symptoms resulting in the
22  limitations articulated by the treating physician, Dr. Lee.
23  Further, the ALJ found no evidence of malingering.   Therefore,
24  the analysis moves to the second stage.
25        Pursuant to the second stage of the analysis, the ALJ
26  must consider the credibility of plaintiff's testimony
27  regarding the severity of his symptoms.   The ALJ must provide
28  clear and convincing reasons for discrediting plaintiff's

7   - OPINION AND ORDER

1    testimony regarding the severity of his symptoms.  <u>Dodrill v.</u>

2    <u>Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993).  The ALJ must make

3    findings that are "sufficiently specific to permit the

4    reviewing court to conclude that the ALJ did not arbitrarily

5    discredit the claimant's testimony."  <u>Orteza v. Shalala</u>, 50

6    F.3d 748, 750 (9th Cir. 1995).

7        To determine credibility, the ALJ may consider objective

8    medical evidence and the plaintiff's treatment history.

9    <u>Smolen</u>, 80 F.3d at 1284.  The ALJ may also consider the

10   plaintiff's daily activities, work record, and observations of

11   physicians and third parties with personal knowledge about the

12   plaintiff's functional limitations.  <u>Id</u>.  In addition, the ALJ

13   may employ ordinary techniques of credibility evaluation such

14   as prior inconsistent statements concerning symptoms, and

15   statements made by the plaintiff that appear to be less than

16   candid.  <u>Id</u>. 20 C.F.R. § 404.1529; SSR 96-7p.

17       Here, the ALJ found that the medical record does not

18   support plaintiff's allegations that he is unable to perform

19   basic work activities due to his impairments because "claimant

20   reported to Dr. Lee on July 16, 2004, [that]...he had generally

21   good consequences of all [the] interventions."  Tr. 20.  I

22   disagree and find this citation taken out-of-context by the ALJ

23   to support the contention that the medical evidence does not

24   support plaintiff's limitations.  In fact, on July 16, 2004,

25   Dr. Lee sent plaintiff a letter that read in its entirety:

26       Dear Mr. Morrow,
         The results of your recent x-rays are normal.  The chest
27       x-ray we got on your last visit was considered normal.
         That is good news, and I thought you would like to know.
28       I hope your summer is going well.

8    - OPINION AND ORDER

Sincerely,
/s/ David K. Lee, MD.

Tr. 496-97.

The referenced x-rays in the letter were performed as a follow up to plaintiff's mild stroke on November 3, 2003.  Tr. 444.

The remainder of Tr. 497 begins a mental status exam and clinical interview of plaintiff at the Boise Veterans Administration Hospital for PTSD by Richard T. Sonnenberg, PhD, on July 8, 2004.  Tr. 497-499.  Dr. Sonnenberg begins his dictation of the clinical interview as follows: "The Veteran reported that he is presently being treated for hypertension, high cholesterol, and chronic back pain at this facility.  *He reports generally good consequences of those interventions*." Tr. 498 (emphasis added).  The dictation of the clinical interview continues with paragraphs discussing recent legal issues, the nature of plaintiff's home surroundings and hobbies, the circumstances that bring forth plaintiff's Vietnam memories, and plaintiff's alcohol dependency issues.  Tr. 498-99.

I find that plaintiff's statement that he has "generally good consequences of [his doctors'] interventions" is cursory and unilluminating as to the actual nature of plaintiff's physical impairments.  The statement at issue was made in a mental health exam interview to a psychologist who was probing plaintiff for an overall picture of his life.  Dr. Sonnenberg also reported that plaintiff "made poor eye contact...over the course of our time together" and that plaintiff's attitude toward the evaluation, and to life in general, was "anxious,

9    - OPINION AND ORDER

1    yet forthcoming."  Tr. 497.  I find that such an assessment

2    highlights plaintiff's discomfort and further minimizes the

3    significance of the statement at issue.  As such, it was

4    inappropriate for the ALJ to rely on this statement to discount

5    the entire medical record as not in accord with plaintiff's

6    subjective complaints.

7         The ALJ further found that "the record includes evidence

8    strongly suggesting that the claimant has exaggerated symptoms

9    and limitations," because examining Dr. Grunwald "reported that

10   the claimant appeared to be hyperresponsive."  Tr. 20.  I

11   disagree with the ALJ's characterization that Dr. Grunwald's

12   "hyperresponsivity" notation alone "strongly suggests" that

13   plaintiff has exaggerated symptoms and limitations.  I conclude

14   that the medical evidence supports plaintiff's allegations that

15   he is unable to perform basic work activities due to his severe

16   impairments.

17        The ALJ's second reason for finding plaintiff not

18   credible is that plaintiff's "current daily activities are

19   inconsistent with his alleged level of limitations" because

20   "the record reflects a number of activities after the alleged

21   disability onset date, which does indicate the claimant's daily

22   activities have...been greater than the claimant has generally

23   reported."  Tr. 20.

24        As support for this finding, the ALJ first cited the fact

25   that "claimant reported he used to walk 4-5 miles per day until

26   his ankles went out."  Id.  Plaintiff's actual report was that

27   he "used to walk 4-5 mi/day - stop/rest/stop/rest - until

28   ankles went out."  Tr. 403.  I find that this statement by

1    itself does not support the ALJ's finding that plaintiff's

2    current daily activities are inconsistent with his alleged

3    level of limitations.

4        The ALJ's next citation is to a report by Dr. Lee on July

5    16, 2004, that plaintiff "spends a good deal of his time

6    fishing, hunting, and doing shop work." Tr. 20. As noted

7    previously, this statement was not made by Dr. Lee, rather it

8    was part of a summary of a mental health interview by the VA

9    psychologist, Dr. Sonnenberg, on July 8, 2004. Tr. 498. As

10   discussed previously, this statement was made in the context of

11   a mental health clinical interview to determine whether

12   plaintiff has PTSD, and the statement's generality does not

13   help quantify the specific relationship between plaintiff's

14   activities and his alleged level of limitation.

15       The ALJ next cites plaintiff's "treatment notes in August

16   and September of 2004 [that] reveal the claimant prepared a

17   follow-up leisure plan for alcohol dependence recovery, which

18   included activities such as gardening, canning, walks, hunting,

19   fishing, woodworking, building a shed and fish pond, and

20   following through with walking program." Tr. 20. Again, these

21   notes were made by Recreational Substance Abuse Therapy (RSAT)

22   therapists while plaintiff was completing an alcohol counseling

23   program. On August 26, 2004, the RSAT care manager noted that

24   "Vet was having difficulty planning activities. Informed vet

25   of importance of learning how to stay busy to avoid boredom and

26   potential relapse." Tr. 476. On September 7, 2004, the

27   Recreation Therapist noted that plaintiff "has been involved

28   with Recreation Therapy 3-4 x per week for 1-4 hour sessions

11   - OPINION AND ORDER

while in RSAT....He has completed the required craft project.
He completed his art expression and is scheduled to share the
meaning with the therapeutic community prior to graduation this
pm.  He has written a follow-up plan for leisure in recovery
which includes: gardening and canning; walks; hunt and fish; no
social activities; woodworking; may watch football games.
[Plaintiff's] leisure goals include: build a shed and fish
pond; stay active with current leisure activities only do them
sober; follow through with walking program."  Tr. 472.

I disagree with the ALJ's characterization that these
statements made during alcohol counseling are inconsistent with
plaintiff's alleged limitation level.  Throughout the multi-
week program, recreation therapists had been encouraging the
participants to design aspirational goals that assist them in
abstaining from alcohol.  Writing a follow-up plan that
includes "gardening, canning, walks, hunting, fishing, and
woodworking" does not contradict plaintiff's alleged severe
impairments - chronic back pain, shoulder and ankle pain, and
PTSD.  Further, the third-party questionnaire completed by
plaintiff's wife explained that plaintiff "does a few hours of
woodcraft" during the day, "in the summer he fishes for a few
hours every other day, and once a year he goes hunting."  Tr.
96.  Again, I find that when the aspirational post-recovery
leisure plan is viewed in the broader context of plaintiff's
life, such hopes and goals do not contradict the limitations
caused by plaintiff's medically supported severe impairments.

The ALJ next observes that "the medical records reveal on
October 18, 2004, [plaintiff] reported he built a meat room and

12   - OPINION AND ORDER

a greenhouse, in the last three months." Tr. 20.  In response
to the recreation therapist's questionnaire which asked for
leisure activities within the last 3 months, plaintiff
responded "spend time with granddaughter, working on building a
meat room, and build a greenhouse." Tr. 482.  At the hearing,
the ALJ asked plaintiff to explain this comment about his
recent activities, including building a meat room and a
greenhouse.  Tr. 561.  Plaintiff explained that "my sons were
doing the work and I was basically overseeing it.  They would
do all the heavy lifting and the working, and I would basically
just tell them how to do it and what to do." Tr. 561.  As to
the greenhouse, which was indicated as a future goal in
plaintiff's recreational therapy follow-up plan, plaintiff
explained that "hopefully my son would help me.  I mean that's
just stuff that's got to be done around the house, you know, in
the future that when they come over, they can help me with."
Tr. 562.  Given plaintiff's explanation of the nature of his
involvement in the building of a greenhouse and meat room, I
again disagree with the ALJ that plaintiff's statements to the
recreation therapist contradict his alleged level of
limitation.

Finally, the ALJ cites as support for plaintiff's
"inconsistencies" that "medical records also reveal the
claimant had obligations to rewire a mountain cabin to bring it
up to code." Tr. 20.  In the course of arranging a time when
plaintiff could take part in the RSAT program, Dr. Dewey noted
that plaintiff "had obligations.  He needs to pick up his wife
in Portland.  He needs to rewire a mountain cabin that he owns

13   - OPINION AND ORDER

1   and bring it up to code according to the order of the county."
2   Tr. 496.   I do not find this fact significant because it is
3   unclear whether plaintiff himself intends to rewire the cabin,
4   or whether he will employ help from his sons or others.   At the
5   hearing, the ALJ did not inquire further into the nature of
6   this obligation.   Even if plaintiff is planning to rewire the
7   cabin himself, it is not clear that such a project indicates
8   plaintiff's alleged limitations are inconsistent with such an
9   activity.
10       The ALJ's final reason for rejecting plaintiff's
11   testimony is that "regarding his activities, [plaintiff] has
12   provided inconsistent information."   Tr. 20.   The ALJ states
13   that "at the hearing, [plaintiff] denied performing
14   construction activities, which is contrary to the numerous
15   notes throughout the medical record."   Id.   All of plaintiff's
16   alleged construction activities were discussed above, i.e.
17   greenhouse, meat house, future fish pond and shed, and future
18   cabin rewiring.   Plaintiff explained that he had help
19   completing several of the projects, and intended to get help to
20   finish the others.   I find the ALJ's reasoning to be a
21   repetition of the prior argument, which I have addressed.
22   Plaintiff's explanations for his activities indicate that his
23   level of limitation is in fact consistent with his current
24   daily activities.
25       An ALJ may reject a claimant's testimony if the claimant
26   is able to spend a substantial part of the day performing
27   household chores or other activities that are transferable to a
28   work setting.   The Act, however, does not require that

14   - OPINION AND ORDER

1    plaintiff be incapacitated to be eligible for benefits, and

2    "many home activities may not be easily transferable to a work

3    environment where it might be impossible to rest periodically

4    or take medication." <u>Smolen</u>, 80 F.3d at 1284.

5        Thus, I find that the ALJ failed to provide adequate

6    reasons for rejecting plaintiff's subjective testimony.

7    B.    Medical Evidence

8        Plaintiff objects to the ALJ's use of the nonexamining

9    physician's assessment of plaintiff over the limitations

10   assessed by the treating physician in formulating plaintiff's

11   RFC.

12       An ALJ considers three types of medical opinions -

13   treating, examining, and nonexamining - in determining the

14   nature of a claimant's disability, and accords each a different

15   weight.  <u>See</u> <u>Lester v. Chater</u>, 81 F.3d 821, 830-31 (9th Cir.

16   1996).  Medical opinions and conclusions of treating physicians

17   are accorded special weight because these physicians are in a

18   unique position to know claimants as individuals, and because

19   the continuity of their dealings with a claimant enhances their

20   ability to assess the claimant's problems.  <u>See</u> <u>Winans v.</u>

21   <u>Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987).

22       A treating physician's medical opinion as to the nature

23   and severity of an individual's impairment must be given

24   controlling weight if that opinion is well-supported and not

25   inconsistent with the other substantial evidence in the case

26   record.  <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1157 (9th Cir.

27   2001); <u>see also</u> 20 C.F.R. § 404.1527(d)(2).  Even when the

28   treating physician's opinion is contradicted by the opinion of

15   - OPINION AND ORDER

a non-treating physician, the treating physician's opinion "can
only be rejected for specific and legitimate reasons that are
supported by substantial evidence in the record." <u>Lester</u>, 81
F.3d at 830-31. The opinion of a nonexamining physician cannot
by itself constitute substantial evidence that justifies the
rejection of the opinion of a treating physician. <u>Id</u>. at 831.

Here, the nonexamining physician's RFC-related assessment
contradicts the treating physician's assessment. As such, this
court will review the ALJ's rejection of the treating
physician's assessment for "specific and legitimate reasons
that are supported by substantial evidence in the record." <u>Id.</u>
at 830-31. The treating and nonexamining physicians' RFC-
related assessments of plaintiff are excerpted below.

Treating physician Dr. Lee:

Plaintiff can perform sedentary work and light work, with
considerable pain, but not medium work, even if he can
alternate between sitting and standing during the work
day. Plaintiff can stand/walk for 20 minutes at a time
for a total of 3 hours a day. Plaintiff can
handle/finger for 20 minutes at a time for a total of 5
hours a day. There is no evidence of malingering. Due
to the severity of plaintiff's impairments, he would be
unable to complete two work days a month at the light or
sedentary levels of exertion. Tr. 528-30.

Nonexamining physician:

Plaintiff can frequently lift and/or carry 25 pounds, and
occasionally lift and/or carry 50 pounds. He can stand
and/or walk with normal breaks about 6 hours in an 8-hour
work day. Plaintiff can sit with normal breaks about 6
hours in an 8-hour work day. He is limited in reaching
all directions, he can occasionally use ladders, ropes,
and scaffolds, and he can occasionally stoop or crawl.
Tr. 414-418.

Plaintiff first objects to the ALJ's rejection of Dr.
Lee's opinion as the treating physician. The ALJ found that

16   - OPINION AND ORDER

Dr. Lee's opinion, as communicated through the Social Security Administration's "check-the-box" form, is not supported by objective evidence or other medical evidence of record, and thus cannot be given controlling weight.  Tr. 21.  Plaintiff argues that if Dr. Lee's assessment were utilized, the RFC would reflect that plaintiff would not be employable.

In reviewing the record, I find the ALJ's broad conclusion that Dr. Lee's opinion is "not supported by objective evidence or any other medical evidence" does not rise to the necessary standard of "specific and legitimate reasons" for discounting a treating physician's testimony.  Dr. Lee did, in fact, complete a "check-the-box" form, but the court notes that such a form is the required "Medical Source Statement" for consideration of disability benefits.  While it takes the form of "check-the-box," the data contained therein is a culmination and summary of the entire treating relationship between Dr. Lee and plaintiff.

Dr. Lee first examined plaintiff on April 28, 2003 for back pain, arthritis in the ankles, hypertension, carpal tunnel syndrome, and PTSD.  Tr. 436.  Dr. Lee noted that plaintiff's back pain gets "good relief from Vicodin [and he] may go several days without any; [but] then he will need two or rarely three a day."  Id.  The next appointment with Dr. Lee occurred on September 17, 2003.  Tr. 442.  Dr. Lee reported that plaintiff's back problems are "still his most active problem.  He does not do badly if he does not do anything, but any exertion or sustained sitting will cause pain."  Id.  Dr. Lee also reported that with treatment, plaintiff's shoulder and

17    - OPINION AND ORDER

1    wrist pain had improved.  Id.  Significantly, after treating

2    plaintiff again on November 10, 2003, Dr. Lee reported that

3    plaintiff's "back pain continues to give him pain.  To the best

4    of my medical opinion, his back discomfort would be disabling

5    from any significant truck driving."  Tr. 447.  Dr. Lee also

6    reported that plaintiff "still gets pain in both wrists, right

7    greater than left."  Id.  On February 25, 2004, Dr. Lee noted

8    that plaintiff's back pain and carpal tunnel pain continued,

9    and thus treatment with ibuprofen and Vicodin should continue.

10   Tr. 454.  On June 28, 2004, Dr. Lee reported that plaintiff was

11   still suffering from "gouty arthritis" but that it "responds

12   well to [the medication] indocin."  Tr. 499.  Dr. Lee further

13   reported that plaintiff's PTSD Screen was positive, and the

14   PTSD psychologist and Dr. Lee would coordinate visits because

15   plaintiff lives so far away from the Veterans Administration

16   Hospital.  Id.  Finally, Dr. Lee completed the social security

17   medical source statement on November 17, 2004.  Tr. 528.

18        Despite the ALJ's assertions that Dr. Lee's opinion is

19   not supported by the objective medical evidence, I note that

20   the record is replete with objective medical evidence related

21   to plaintiff's severe impairments.  On April 21, 1997, x-rays

22   revealed osteoarthritis in plaintiff's thoracic and lumbar

23   spine, tr. 197, 202, and on July 17, 1997, an MRI revealed mild

24   degenerative disc disease at C6-C7.  Tr. 197, 409.  The MRI

25   further revealed that plaintiff has mild levoscoliosis of the

26   mid-lumbar spine, and subtle scoliosis with convexity to the

27   left in the mid-lumbar region.  Id.  In 1998, plaintiff was

28   diagnosed with tendinitis of the right shoulder and

1    osteoarthritis of the left shoulder.  Tr. 185, 189, 376.  In

2    2000, plaintiff underwent repair of a full thickness tear of a

3    tendon in his left shoulder.  Tr. 213, 350, 371.  On March 3,

4    2003, plaintiff's back x-rays showed subtle scoliosis with

5    convexity to the left in the mid-lumbar area, mild osteophytes

6    at L2-L3, L3-L4, and disc spaces that appeared to be preserved.

7    Tr. 243-45.  On April 16, 2003, nerve conduction studies and

8    EMG testing found plaintiff had mild bilateral median

9    neuropathy of the wrist, resulting in carpal tunnel syndrome or

10   thoracic outlet syndrome.  Tr. 436.  On November 3, 2003,

11   plaintiff was assessed with having had a mild stroke, or

12   temporary ischemic attack (TIA).  Tr. 444.  On July 8, 2004,

13   plaintiff was given a psychiatric evaluation by Richard T.

14   Sonnenberg, Ph.D., who considered plaintiff 50% disabled due to

15   PTSD.  Tr. 497.

16        Despite the abundance of objective medical evidence in

17   the record, the ALJ explained that Dr. Lee "apparently relied

18   quite heavily on the subjective report of symptoms and

19   limitations provided by plaintiff, and seemed to uncritically

20   accept as true most, if not all, of what the claimant

21   reported."  Tr. 21.  I disagree.  As noted above, the medical

22   record is replete with evidence that is consistent with the

23   limitations noted by Dr. Lee.  An ALJ has a special duty to

24   fully and fairly develop the record; if the ALJ thought he

25   needed to know the basis of a treating doctor's opinions in

26   order to evaluate them, he had a duty to conduct an appropriate

27   inquiry.  See 20 C.F.R. § 404.1527(c)(3); Smolen v. Chater, 80

28   F.3d 1273 (9th Cir. 1996).  In light of the medical evidence

19   - OPINION AND ORDER

presented in this record, the ALJ had a duty to identify
specific and legitimate reasons as to why he rejected Dr. Lee's
assessment.  The ALJ failed to do so.

Moreover, the opinion of the treating physician is
further buttressed by the conclusion of the Oregon Vocational
Rehabilitation Division, which stated that "based on medical
and psychological records, I believe that even a sedentary
position would not be advisable" for plaintiff.  Tr. 540.

In conclusion, I find that the ALJ failed to give
specific and legitimate reasons for rejecting the treating
physician's assessment.  The ALJ rejected Dr. Lee's assessment
because it was a "check-the-box" form that "seemed" to rely on
plaintiff's subjective complaints.  The ALJ failed to note
however, that plaintiff had numerous visits with Dr. Lee for
over a year before Dr. Lee completed the Social Security
Administration's check-the-box form.  In addition, the record
contains objective medical evidence supporting Dr. Lee's
assessment of plaintiff, including x-rays, surgeries, emergency
room visits, and psychological evaluations.

C.    Vocational Expert Testimony

The ALJ relied on the testimony of a vocational expert in
finding that the plaintiff could perform light work as a
routine office worker.  Tr. 583.  However, the hypothetical
presented to the vocational expert by the ALJ was incomplete
because it did not include plaintiff's relevant symptoms and
treating physician Dr. Lee's assessment.  At the hearing,
plaintiff's attorney specifically asked the vocational expert
to assess plaintiff's employability if Dr. Lee's opinion that

20    - OPINION AND ORDER

plaintiff would have two medically-related work absences per month were included in the RFC.  The vocational expert testified that plaintiff would be considered not employable. Tr. 584-85.  Thus, because I find that treating physician Dr. Lee's assessment should not have been discounted, plaintiff is considered not employable at step five, and therefore disabled.[1]

The question remains whether these errors require reversal or remand for further consideration.  "The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1232 (9th Cir. 1987).  Remand is appropriate where further proceedings would resolve defects in the administrative proceedings.  However, where new proceedings would simply serve to delay the receipt of benefits and would not add to the existing findings, an award of benefits is appropriate.  <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989).  Here, given plaintiff's undisputed testimony, the medical reports on record including Dr. Lee's assessment, and the hypothetical presented by plaintiff's attorney to the vocational expert, the record is complete and benefits are therefore awarded to plaintiff.

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence, and is therefore reversed and remanded

---

[1] Because I find plaintiff disabled when properly considering the opinion of his treating physician, I will not consider plaintiff's remaining allegations of error.

21    - OPINION AND ORDER

1  for payment of benefits.

2  IT IS SO ORDERED.

3      Dated this 23 day of March 2007.

4

5

6

7                                    _____
                                     Ann Aiken
8                                    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22  - OPINION AND ORDER